# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: March 20, 2008
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2007-SC-000323-WC

DOROTHY KNIGHT             APPELLANT

V.

ON APPEAL FROM COURT OF APPEALS
2006-CA-001962-WC
WORKERS' COMPENSATION BOARD NO. 04-94276

TECO;
HON. A. THOMAS DAVIS,
ADMINISTRATIVE LAW JUDGE; AND
WORKERS' COMPENSATION BOARD

            APPELLEES

## MEMORANDUM OPINION OF THE COURT

### AFFIRMING

An Administrative Law Judge (ALJ) dismissed the claimant's application for benefits based on findings that she failed to prove a permanent impairment or permanent disability due to a February 2004 injury or cumulative trauma. The Workers' Compensation Board and the Court of Appeals affirmed. Appealing, the claimant asserts that the ALJ erred by failing to consider uncontradicted medical evidence of a cumulative trauma injury to her back and shoulder and, therefore, that the claim must be remanded for reconsideration. We affirm.

The claimant was born in 1951 and has a twelfth-grade education. She is certified as a nurse's aide, in CPR, and in first aid and has taken computer technology classes at Hazard Community College. She stated that a non-work-related back injury

sustained in 1997 required medical treatment and caused her to miss four weeks' work.

In 1998 the claimant began working as a janitor, receptionist, and accounts payable clerk for a company that the defendant-employer acquired in November 2000. Her application for benefits alleged that she injured her back while unloading a box of computer paper and boxes of water at work on February 16, 2004. She claimed injuries to her back and left shoulder; work-related left carpal tunnel syndrome; work-related cumulative trauma to her back, neck, and left hand; and secondary depression and anxiety. She did not return to work after February 16, 2004, and asserted in her brief to the ALJ that the testimonies of Drs. Templin and Johnson "together with the cooperation of [the claimant]" required a finding of permanent and total disability.

The claimant had an extensive history of previous treatment for back, shoulder, and left arm conditions. She saw Drs. Polisetty and Rutledge for treatment of neck, left arm, or low back pain on about twelve separate occasions in 1997. Records from the Hazard Appalachian Regional Hospital indicate that she was treated for complaints of neck, shoulder, wrist, or low back pain on about twelve occasions from October 10, 2000, through November 10, 2003. She underwent a third MRI in August 2002.

The claimant reported to Dr. Polisetty in March 1997 that she experienced sudden back pain while installing a garbage can liner and could "not get up for 20 minutes." She gave a history of leg pain and occasional low back pain for the past 1 ½ years. CT revealed a protruded disc at L5-S1. On the same day, she complained to Dr. Rutledge of low back pain and also of neck pain on the left, with pain and numbness that radiated into her left arm. She informed the physical therapist to whom she was referred that she began to experience low back and left thigh pain several days earlier

2

for no apparent reason. She reported that she had experienced back pain ever since falling about 6 years earlier. Diagnostic testing revealed no evidence of a disc herniation, stenosis, neuropathy, or lumbosacral radiculopathy, but her condition was unchanged as of September 1997.

The claimant saw Dr. Wicker at the Hazard Clinic in October 2000, complaining of headaches, neck, and left shoulder pain that she attributed to working at a computer. In January 2001 she reported severe pain in the sacral area that radiated into the left hip and down the left leg. She also reported numbness and tingling in the left leg, which was much weaker than the right and would collapse. She gave a history of injuring her back several years earlier when working in a nursing home. MRI revealed a possible old compression fracture at T12, and Dr. Wicker diagnosed disc degeneration with herniated nucleus pulposus at T12-L1 and at L5-S1. He referred the claimant to Dr. Tibbs, who noted complaints of neck and low back pain in March 2001. He diagnosed degenerative disc disease and lumbar facet arthropathy.

The alleged lifting incident occurred at work on February 16, 2004. The claimant complained in the emergency room of mid to low back pain that radiated into the left hip and leg. Diagnostic tests revealed what appeared to be an old compression fracture at T12 but no recent objective change. Dr. Tibbs noted subsequently that MRI revealed degenerative disc disease and bulging at T11-12 and T12-L1, but he found no evidence of nerve or cord compression.

Dr. Menke evaluated the claimant in March 2004. In his opinion, the degenerative changes and scoliosis predated the work injury, but the injury caused them to be symptomatic. He thought it possible that an abnormality at L3-4 could have

3

resulted from the lifting incident.

Dr. Lester treated and evaluated the claimant three times in May and June 2004. He diagnosed diffuse trapezius, thoracic, and lumbar muscle pain. Noting the previous history of back pain, he stated that the injury at work did not cause the complaints or the carpal tunnel complaint. He found the claimant to be at MMI and assigned a 5% permanent impairment rating, all of which existed and was active before the injury. He thought that she had the physical capacity to perform the type of work that she performed at the time of the injury.

Dr. Johnson, a psychologist, diagnosed major depression and generalized anxiety disorder and recommended ruling out pain disorder. He reported borderline intellectual functioning. Noting that the claimant would have difficulty working at the present time, he assigned a 25-30% permanent impairment rating.

Dr. Best evaluated the claimant for the employer in November 2004 and amended his report in January 2005 after reviewing additional medical records. The claimant reported that she had performed only secretarial duties for about five or six years but then was also given janitorial duties. He stated that her physical exam "was plagued by overreaction and symptom magnification," as confirmed by Waddell findings, functional testing, and little or no elevation in heart rate during testing. Radiographic evidence showed no significant abnormality due to the injury, MRI was within the normal limits for her age, and she demonstrated no objective criteria for work restrictions. In his opinion, she could return to her previous work. Noting that Dr. Pampati had treated her for left shoulder and arm pain and widespread arthritis for years before the injury, he considered the present complaints not to be work-related.

4

The amended report indicated that no objective evidence showed a worsening of the pre-existing back condition due to the injury and that the injury caused no permanent impairment. Dr. Best also noted that November 2004 office notes from Dr. Pampati indicated that the upper extremity complaints responded to vitamin B12 injections, suggesting neuropathy rather than radiculopathy.

Dr. Sharma saw the claimant in December 2004. She gave a history of fracturing T11-T12 in the work-related incident and of shoulder pain, left leg pain that radiated into the leg, numbness and tingling in the leg, and numbness in the foot. She also reported numbness in two fingers of her left hand and stated that she had no problems with her shoulder before the 2004 injury. A shoulder MRI revealed a tear in the distal supraspinarus tendon and marked degenerative changes in the acromioclavicular joint.

Dr. Templin evaluated the claimant in June 2005 at her attorney's request. He attributed her back problems to the February 2004 injury, a previous injury at home, and pre-existing degenerative changes. He noted that although she gave a history of experiencing shoulder pain at the time of the February 2004 injury, medical records indicated that she did not raise such complaints until more than two months later. Thus, in his opinion, the left shoulder condition resulted partially from her work, "which required extensive lifting and carrying items of fairly heavy weight," but not necessarily from the February 2004 injury. He explained that individuals with persistent back pain, which the claimant had experienced since 1997, tend to decrease the stress on the lower back by relying more on their arms when lifting and carrying.

Dr. Templin assigned a 28% combined values permanent impairment rating,

5

attributing a 17% combined values rating to the cervical, thoracic, and lumbar spine and a 13% rating to the shoulder. He attributed half of the spine impairment to pre-existing, active degenerative disc disease and half to the February 2004 injury, which exacerbated the condition. Dr. Templin stated that the claimant lacked the physical capacity to return to the work that she performed at the time of the injury. Based on the history reported by the claimant, he stated on a questionnaire that was attached to his Form 107 that cumulative trauma helped to accelerate a degenerative process in her back and shoulder.

Dr. Cooley, a psychiatrist, evaluated the claimant in November 2005. He diagnosed mild major depression and assigned a 5% permanent impairment rating, attributing it to the injury. But noting the seven-year history of previous back pain, he stated that if the injury exacerbated a pre-existing orthopedic condition, then the same would apply to the depression. In his opinion, depression did not prevent the claimant from performing any previous work.

The parties stipulated that the employer paid $14,213.54 in medical expenses and paid temporary total disability benefits from February 17, 2004, through July 25, 2004. Among the contested issues were the extent and duration of disability, pre-existing active impairment, the compensability of treatment for anxiety and depression, and the claimant's entitlement to future medical benefits.

Noting the claimant's educational level and diverse work history that involved many different skills, the ALJ determined that she failed to put forth her best efforts on testing by Dr. Johnson and rejected his opinions. The ALJ relied on Dr. Best regarding the physical complaints, noting that his evaluation included measures of the

consistency and validity of the claimant's physical complaints and efforts. Dr. Best reported Waddell findings of 5/5, which indicated that her pain complaints were non-physiologic. He also reported that functional capacity, grip strength and isometric testing revealed a sub-maximal effort and marked inconsistencies. The ALJ noted that Dr. Templin attributed the left shoulder condition to cumulative trauma from work-related lifting and carrying but found Dr. Best's opinion that the condition was not work-related to be more persuasive.

Further explaining the reasons for choosing to rely on Dr. Best, the ALJ observed that the claimant had changed treating physicians several times. Dr. Lester reported no change in impairment after the injury. Dr. Tibbs recommended physical therapy, anticipated a good outcome, and did not recommend surgery. Dr. Menke stated that a post-injury lumbar MRI showed only more advanced degenerative changes at L5-S1. The ALJ noted that although the claimant denied any previous left shoulder pain in her discovery deposition, Dr. Wicker had treated her for such pain in October 2000. Although she acknowledged only a previous back "sprain or strain or something like that," Drs. Polisetty and Rutledge had treated her for back and leg pain after a 1997 injury, and physicians at the Hazard Clinic treated her for acute low back pain regularly in 2000, 2001, and into 2002. Dr. Tibbs noted in March 2001 that she complained of severe low back pain that radiated into the left leg, of intermittent weakness in her left arm, and of pain in her neck. Early 2001 diagnostic tests revealed abnormalities at several levels of the spine and a small herniated nucleus pulposis at L5-S1, and Dr. Wicker prescribed Darvocet as early as February 2001.

The ALJ concluded that the 2004 injury caused only a temporary exacerbation of

pre-existing problems for which the claimant had a pre-existing active impairment. She sustained no permanent impairment or permanent disability due to the injury or to cumulative trauma. The ALJ noted that Dr. Cooley attributed a psychiatric impairment to the underlying physical condition and stated that it should be apportioned in the same manner. Finding no work-related impairment, residual impairment, or any lasting effect of the work-related injury, the ALJ dismissed the claim for permanent income and medical benefits.

After her petition for reconsideration was denied, the claimant appealed. She argues presently that Dr. Templin gave uncontradicted testimony that she sustained a work-related cumulative trauma injury to her back and shoulder but that the ALJ failed to consider it. She maintains that the claim must be remanded to the ALJ for further consideration.

As explained in Roark v. Alva Coal Corporation, 371 S.W.2d 856 (Ky. 1963); Wolf Creek Collieries v. Crum, 673 S.W.2d 735 (Ky. App.1984); Snawder v. Stice, 576 S.W.2d 276 (Ky. App. 1979), the burden is on an injured worker to prove every element of her claim, including work-related causation. Drs. Best and Templin differed regarding the cause of the claimant's back and shoulder complaints. Dr. Best considered none of the complaints to be work-related. Based on a history received from the claimant, Dr. Templin attributed some of the back and left shoulder complaints to work-related cumulative trauma.

Because KRS 342.285 designates the ALJ as the finder of fact, the court has stated in Paramount Foods, Inc. v. Burkhardt, 695 S.W.2d 418 (Ky. 1985), and in numerous other decisions that an ALJ has the sole discretion to determine the quality,

8

character, and substance of evidence. The ALJ found the claimant not to be credible based on inconsistencies between the documented history, her deposition testimony, and the history that she related to the various physicians, including Dr. Templin. No independent evidence indicated her work involved significant or repetitive heavy lifting. Because the ALJ found the claimant not to be credible, the ALJ was not required to rely on an opinion of causation that was based on her self-reported work requirements. The ALJ did not fail to consider the cumulative trauma theory. The ALJ found Dr. Best's opinions to be more persuasive and rejected the theory.

The decision of the Court of Appeals is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT,
DOROTHY KNIGHT:

JAMES D. HOLLIDAY
109 BROADWAY
P.O. BOX 29
HAZARD, KY 41702

COUNSEL FOR APPELLEE,
TECO:

JEFFREY D. DAMRON
BAIRD & BAIRD, P.S.C.
P.O. BOX 351
PIKEVILLE, KY 41502